FILED
 2015 Dec-21  AM 09:29
 U.S. DISTRICT COURT
     N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **NICOLE ARMSTRONG,**   )<br>                                                    )<br>          **Claimant,**                  )<br>                                                    )<br>**vs.**                                             )<br>                                                    )<br>**CAROLYN W. COLVIN, Acting**  )<br>**Commissioner, Social Security** )<br>**Administration,**                      )<br>                                                    )<br>          **Defendant.**                  )  | **Civil Action No. 6:15-cv-309-CLS** |

**MEMORANDUM OPINION AND ORDER OF REMAND**

Claimant, Nicole Armstrong, commenced this action on February 20, 2015, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplementary security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ failed to consider her depression to be "severe" under the meaning of the Social Security Act, improperly considered her subjective complaints of pain, failed to consider all of her impairments in combination, and failed to fully and fairly develop the administrative record. Upon review of the record, the court finds merit in claimant's first argument.

A "severe" impairment as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (alteration supplied). The ALJ found that claimant's depression was not severe because it did not cause "more than minimal work-related limitations."[1] According to the ALJ, claimant had only mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. The ALJ also stated:

> The fact that claimant's depression is non-severe is confirmed by the objective medical evidence of record, which shows that her depression is well controlled with medications . . . . Furthermore, the

---

[1] Tr. 11.

2

claimant has lived alone for the past two years and has performed all of her own household chores. She requires no assistance to run her household, as evidenced by the medical evidence of record. Dr. Brovender [the medical expert who testified during the administrative hearing] also testified that the claimant's depression was not a severe impairment.[2]

Finally, the ALJ noted that claimant had not been diagnosed with any residual disease process that would cause decompensation with only minimal increases in mental demands, that she had no history of requiring a highly supportive living environment, and she had not displayed an inability to function outside of her home.[3] Those findings are not supported by the record.

Dr. Brovender testified that claimant did not suffer from *any* "severe medical[ly] determinable impairment."[4] He did not specifically address claimant's depression, even though the ALJ asked him to address *any* type of medical impairments, including those resulting from a "psychological abnormality."[5] Instead, Dr. Brovender addressed claimant's foot x-ray, left shoulder pain, range of motion in upper and lower extremities, and gait. He stated that claimant's "motor, neurological, and sensory examination is normal," but he did not address her mental status.[6] Dr.

---

[2] *Id.* (alteration supplied, citation to the record omitted).

[3] *Id.*

[4] Tr. 27 (alteration supplied).

[5] Tr. 26.

[6] *Id.*

Brovender's focus on claimant's physical ailments is to be expected, because his area of specialty is orthopedic surgery, not psychiatry.[7] Considering Dr. Brovender's specialty, and looking at his testimony as a whole, it cannot be said that Dr. Brovender offered a definitive opinion that claimant's depression was not severe. If he did offer such an opinion, it is not entitled to controlling weight, because Dr. Brovender is neither a psychiatrist nor a treating physician, and his opinion is inconsistent with the medical evidence as a whole, as will be discussed more fully in the following paragraphs.

Specifically, the record does not support Dr. Brovender's conclusion that claimant's depression was well controlled with medication. Viewed as a whole, claimant's mental health records indicate that her medications may have helped some, but they did not ameliorate her condition completely, or even reduce its impact on plaintiff's life to a minimal level. On claimant's first visit to Northwest Alabama Mental Health Center on September 9, 2011, she reported experiencing flashbacks to childhood sexual abuse by her stepfather and physical abuse as an adult by two different domestic partners. She reported feeling hopelessness, sadness, inability to sleep, visual hallucinations, fatigue, diminished interest in activities, inability to handle stressors, and periods of irritability. Claimant denied any thoughts of hurting

---

[7] *See* Tr. 25.

herself or others, but she did experience ongoing medical issues that negatively impacted her mood and behavior. She also was embarrassed because her hair was falling out. She was assessed with major depression, single episode, severe, with psychotic features, and she was assigned a GAF Score of 45, indicating serious symptoms.[8]

On October 11, 2011, claimant described her mood as "sad," and her affect was constricted. She had a long history of seeing shadows and hearing her name being called. She was unable to sleep without a light on and sometimes felt scared with no known cause. She slept only three hours at night, but got more sleep during the day. Her feelings of paranoia were worse during the night hours. She denied suicidal or homicidal ideations, but she did have "vague thoughts." Claimant received prescription medications.[9]

On October 25, 2011, claimant reported continued auditory hallucinations and flashbacks to prior abuse. She experienced episodes of feeling sad every three weeks. The nurse practitioner described claimant as being "emotionally and psychiatrically fragile." Plaintiff continued to deny suicidal or homicidal ideations. Her medications were adjusted.[10]

---

[8] Tr. 358-59.
[9] Tr. 356.
[10] Tr. 444.

On November 15, 2011, claimant rated her level of depression and anxiety as a "7" on a scale of 1 to 10. She experienced "episodes of acute paranoia, particularly at night," and an increasing number of visual and auditory hallucinations. She was again noted to be "psychiatrically fragile," and her medications were adjusted.[11]

On December 13, 2011, claimant reported increased anxiety and depression but no auditory or visual hallucinations.[12]

On January 18, 2012, claimant reported that her medication was effective at controlling her auditory hallucinations, but she did endorse episodes of feeling sad and irritable. Her affect was anxious and constricted, and she was noted to be psychiatrically, financially, and emotionally fragile.[13]

On February 19, 2012, claimant reported "doing well" because her medications were effective. She was sleeping well and had a good appetite. She was fully oriented and experienced no psychomotor agitation or retardation. Her thought processes were logical and coherent. She experienced moderate stress related to her daughter being in the military, but she denied suicidal ideations, homicidal ideations, and hallucinations. Her speech was coherent and appropriate, and she was continued

---

[11] Tr. 442.
[12] Tr. 439.
[13] Tr. 436.

on her current medications.[14]

On April 13, 2012, claimant's treatment plan was reevaluated. Her assessment remained major depressive disorder, single episode, severe, with psychotic features. She also was assessed with post-traumatic stress disorder. She received a GAF score of 50, still indicating serious symptoms.[15]

On May 31, 2012, claimant reported frequent nightmares, depressed mood, and situational stress.[16]

On June 20, 2012, claimant denied suicidal or homicidal ideations, but she did report nightmares and auditory and visual hallucinations. Her affected was blunted, and she described her mood as frustrated and overwhelmed. She exhibited no psychomotor agitation or retardation. Her thought processes were goal directed and logical. The effectiveness of her medications was "fair."[17]

On August 31, 2012, claimant reported to her therapist that she continued to feel depressed.[18]

On September 19, 2012, she reported continued audio and visual hallucinations during times of acute stress, although the number of episodes had decreased to one

---

[14] Tr. 433.
[15] Tr. 428.
[16] Tr. 425.
[17] Tr. 424.
[18] Tr. 422.

or two each week.  Her paranoia had decreased and she did not feel scared anymore. Her medications caused hypersomnia and daytime sleep, but she also sometimes experienced episodes of acute insomnia.[19]

Claimant's treatment plan was reevaluated once again on December 14, 2012. She continued to receive diagnoses of major depressive disorder, single episode, severe, with psychotic features, and post-traumatic stress disorder.  Her GAF score on that day was 60, indicating moderate symptoms.[20]

In light of all of this evidence, the ALJ's finding that claimant did not suffer more than minimal work-related limitations is not supported by substantial evidence. It is reasonable to expect that the repeated hallucinations, paranoia, sadness, and anxiety claimant experienced would have a significant effect on her ability to perform work-related activities, even if she did sometimes experience relief with medication. Thus, the ALJ should have found claimant's depression and other psychological impairments to be "severe."

That does not necessarily mean, however, that claimant is entitled to benefits. Instead, further development of the record is warranted with regard to claimant's mental impairments and their effect on her ability to perform work-related activities.

---

[19] Tr. 423.
[20] Tr. 417.

Accordingly, the decision of the Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The clerk is directed to close this file.

DONE this 21st day of December, 2015.

                                                               _____
                                                               United States District Judge